PARKER, Judge.
The appellants, Brenda and Mark Murray (Murray), allege error by the trial court in the granting of summary judgment for the appellees, Gulfcoast Transit Company (Gulfcoast) and TECO Transport and Trade Corporation (TECO). We find merit in the Murrays’ appeal and reverse.
Gulfcoast owns and operates numerous barges including the coal barge on which Murray was working on the day of his accident which gave rise to the instant ac *785 tion. At the time of the accident, Murray was employed by GC Services as a harbor worker. GC Services was a company contracted by Gulfcoast to undertake the unloading, repairing, maintaining, and cleaning of the barges. Gulfcoast and GC Services are closely related corporations, in that they have several officers in common and both are owned by TECO, which functions as a holding company.
Murray’s accident occurred in the fore-peak area of the barge, a confined space which at the time of the accident had little or no ventilation. The forepeak housed a ballast pump, an electric generator powered by a diesel engine, and two large diesel engines. No ventilation blowers were available in that area. The only circulation of air in the area came from a single door which provided access to the fore-peak’s ladder. Although portable blowers and oxygen masks were obtainable from GC Services by its employees, there was no practice of requiring the use of these safety devices which were seldom, if ever, used. There was evidence in the record indicating an awareness by agents of Gulfcoast and GC Services regarding this lack of safety precautions.
On the evening of the accident, Murray had been sent into the forepeak area to pump out oil and diesel fuel which had accumulated on the floor. This accumulation of oil and diesel fuel was an ordinary occurrence in that area of the barge, which was attributed to various causes unimportant to the resolution of this case. In addition to the combination of oil and fuel, the strong soap solution generally used for “cutting” the oil had been spread on the forepeak floor by another employee before Murray arrived. According to Murray, after spending approximately ten minutes shutting down the ballast pump and diesel engines, he left the area to obtain a portable pump because the barge’s pump was inoperative. The pump was utilized for gathering the soap, oil, and fuel which accumulates in the forepeak. Murray carried the portable pump, which weighed sixty to eighty-five pounds down into the forepeak. At the time, the forepeak was hot and filled with fumes emanating from the oil, fuel, and soap. After Murray attempted for fifteen to twenty minutes to operate the pump, the pump would not start. Murray then proceeded to carry the pump back up the steep, narrow-treaded ladder leading into the forepeak, which was slippery from the oil and grease. During that assent, Murray blacked out from the heat and fumes falling onto the deck below and sustaining injuries.
Murray brought suit against Gulfcoast and TECO, alleging that these defendants’ negligence caused his injuries by failing in various respects to provide him with a reasonably safe place in which to work. Gulf-coast and TECO answered, admitting ownership of the barge and generally denying liability. They also asserted the affirmative defense that Murray’s status as a harbor worker limited his remedies to those which he would be entitled to pursue under the Longshoremen’s and Harbor Workers’ Compensation Act (LHWCA). See 33 U.S. C. § 901-50 (1976).
Thereafter, Gulfcoast and TECO moved for summary judgment contending, in essence, that Gulfcoast was the owner of the barge and had engaged GC Services to clean the barge and that Murray was an employee of GC Services, who had the sole duty to protect its employees from hazardous conditions existing aboard the barge. Gulfcoast and TECO further alleged that under section 905(b) of the LHWCA, Gulf-coast had breached no separate duty owing to Murray. After a hearing on the motion in which evidence in the form of depositions and affidavits was introduced, the trial court granted Gulfcoast’s and TECO’s motion for summary judgment entering final judgment in their favor.
The following evidence was presented to the trial court at the hearing on the motion for summary judgment. On the day of the accident, Gulfcoast had not undertaken to clean the forepeak area because that responsibility rested with GC Services whenever the barge was brought into the harbor for unloading. The conditions in the fore-peak as described above existed regularly for a period of several years. Employees of GC Services complained of these various *786 hazards to representatives of the barge’s owner, including Richard Paris, a Gulfcoast foreman, but no action was ever taken to remedy the situation.
Despite these dangers, GC Services’ employees had cleaned the area for several years without adequate ventilation and without protecting themselves against the noxious fumes. Portable blowers and oxygen masks which would have provided some relief and protection from these conditions to the workers were available from GC Services, but remained unutilized. For over four years, representatives of Gulf-coast, including Paris, were regularly present on the scene during cleaning operations and directed the work activities of GC Services’ personnel. During this period, Gulfcoast supervisors never intervened to insure that the safety devices were utilized by GC Services’ personnel.
Initially, we observe that unless a defendant moving for summary judgment in a negligence case can demonstrate unequivocally the absence of any negligence, or that the plaintiff’s negligence was the sole proximate cause of the injury; courts will not be disposed to grant summary judgment in the defendant's favor. Wills v. Sears, Roebuck & Co., 351 So.2d 29 (Fla.1977).
The duty of care generally owed by a shipowner to a harbor worker has been codified under 33 U.S.C. § 905(b) (1976), with the extent of that duty being defined by the case law represented by Scindia Steam Navigation Co. v. De Los Santos, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981) and its progeny.[1] From these cases, three basic principles emerge which are applicable in determining the shipowner’s liability to a harbor worker or longshoreman under a given set of circumstances: (1) The shipowner (Gulfcoast) has a duty to turn over its ship to the stevedore (GC Services) in a reasonably safe condition; (2) once the stevedore commences its work, the shipowner is under no general duty to supervise that work or to inspect the area in which the stevedore is conducting its operations; and (3) a duty does arise in the shipowner to protect the stevedore’s employees if the shipowner becomes aware that a condition in the ship poses a danger to those employees and the shipowner learns the stevedore is failing reasonably to protect its employees.
The Murrays invoke part three of the above test established in Scindia, contending that Gulfcoast had a duty to intervene to correct the dangerous condition existing on the barge’s forepeak of which Gulfcoast was aware and based upon Gulfcoast’s further knowledge that GC Services was not taking any measures to remedy the situation. After examining the record before us and in light of the procedural posture of this case, we agree with the Murrays’ contention.
The cases finding such a duty to intervene on the part of the shipowner only involve those circumstances in which the shipowner had actual knowledge of the danger and that the stevedore or independent contractor was not undertaking to remove or alleviate that danger. Hernandez v. M/V Rajaan, 841 F.2d 582 (5th Cir. 1988); Barrios v. Pelham Marine, Inc., 796 F.2d 128 (5th Cir.1986).
In the present case, the deposition testimony of Walter Shurtleff, a former GC Services’ employee who had performed the same cleaning duties as Murray, revealed that complaints had been made to representatives of Gulfcoast regarding the dangerous situation existing in the forepeak area. These complaints ranged from concerns with the fumes caused by the mixture of chemicals, lack of ventilation and the steep, narrow nature of the stairs leading to and from the forepeak. Shurtleff’s testimony further established that the only breathing apparatus available to the harbor workers were to be supplied by GC Services. However, this equipment was not maintained on the barge but was intended *787 to be transported to the barge during cleaning operations, which seldom was done. As a result, this safety equipment was rarely, if ever, utilized by the harbor workers. In addition, actual knowledge of these conditions and of GC Services’ failure to ameliorate these conditions by furnishing its employees with the proper equipment may be imputed to Gulfcoast from evidence reflecting that Richard Paris, a Gulfcoast employee, was often present during these operations and acted in a directory capacity.
Certainly, therefore, a material factual dispute concerning Gulfcoast’s actual knowledge of the conditions in the forepeak and of GC Services’ actions, or lack thereof, in that regard has been created by the evidence, thereby precluding the disposition of this case by means of summary judgment. See Holl v. Talcott, 191 So.2d 40 (Fla.1966). At trial, a jury will decide the extent of Murray’s own negligence in failing to use any available safety equipment.
Accordingly, the summary judgment granted by the trial court is reversed, and the case is remanded for the trial court to proceed in a manner consistent with this opinion.
Reversed and remanded.
RYDER, A.C.J., and HALL, J., concur.

. Casaceli v. Martech International Inc., 774 F.2d 1322 (5th Cir.1985), cert. denied, 475 U.S. 1108, 106 S.Ct. 1516, 89 L.Ed.2d 914 (1986); Meserole v. M/V Fina Belgique, 736 F.2d 147 (5th Cir.1984); Stass v. American Commercial Lines, Inc., 720 F.2d 879 (5th Cir.1983); Duplantis v. Zigler Shipyards, Inc., 692 F.2d 372 (5th Cir.1982).